[Civ. No. 3885. Second Appellate District, Division One.—May 2, 1922.]

## CHING WING, as Administrator, etc., Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

[1] NEGLIGENCE—DOCTRINE OF LAST CLEAR CHANCE—APPLICABILITY.— Where the rule of last clear chance applies it necessarily presupposes a condition where the party injured has, by his own negligence, placed himself in a situation of danger, and where the party causing his injuries, in addition to whatever primary act of negligence may be chargeable against him, and after perceiving the dangerous situation of the first party, acts with further negligence and injury results.

---

1. Doctrine of last clear chance as affected by question whether negligence of plaintiff or deceased and of defendant was concurrent, notes, Ann. Cas. 1912B, 888; 7 L. R. A. (N. S.) 132, 152; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446; 27 L. R. A. (N. S.) 379.

[2] ID. — KILLING OF PEDESTRIAN — EVIDENCE — INSTRUCTION — LAST CLEAR CHANCE.—In this action for the death of a pedestrian who was killed by being run over by a locomotive while lying on the railroad track of the defendant upon which he had fallen after having been struck by an automobile, the court properly refused to instruct the jury that the rule of recovery could be under the last clear chance doctrine only, since the evidence disclosed that either the operatives of the locomotive were negligent or that the accident was the inevitable result of circumstances for which they were not responsible.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert for Appellants.

Harry M. Irwin and Waldo M. York for Respondent.

JAMES, J.—Plaintiff, having alleged in his complaint that defendants, by acts of negligence, caused the death of his intestate, Wong On King, was awarded damages in the sum of $7,500 by a jury. Judgment followed accordingly and defendants have appealed.

On June 30, 1916, Wong On King was crossing Alameda Street, in the city of Los Angeles, when an automobile collided with him, causing him to fall across the track of the defendant Southern Pacific Company. He was apparently stunned by the fall and, while lying on the track, his legs were crushed by the wheels of a locomotive tender. This injury caused his death. The locomotive of which the tender was a part was owned by defendant company. Defendant Jordan was the engineer in charge of the locomotive and was being assisted at the time by the defendant Thorne as fireman. It is the contention of the appellants that the court erred in the giving of a certain instruction, and in modifying another which was offered on the part of the defendant. As to the errors complained of affecting the instructions as given and modified, appellants insist that under the evidence the case should have been submitted to the jury upon one theory only, that theory being that a situation was presented which might make applicable the doctrine of "last clear chance." It does not

appear to be contended that, assuming that the evidence disclosed a case which might authorize a recovery because of the primary negligence of the defendants, the instructions as given were erroneous. The court refused to instruct the jury that the rule of recovery could be under the "last clear chance" doctrine only, but gave an appropriate instruction setting forth that, if the jury found that the deceased, while traveling across the street, was exercising reasonable care and prudence, and that while so doing the locomotive of defendant company was, through the negligence of the operators thereof, propelled upon him, causing his death, plaintiff should recover. In other instructions given the "last chance" rule was correctly and adequately explained and it was left for the jury to determine whether the facts warranted its application in the case.

A brief statement of the evidence, given a light most favorable to the plaintiff, will show that there was no error in the giving of the instruction first referred to. At about 1:30 o'clock of the day in question Wong On King was at the southeast corner of Marchessault and Alameda Streets. He was proceeding to cross to the opposite side of the street. Marchessault Street enters Alameda Street from the east. Upon Alameda Street are laid double tracks of the defendant corporation. A freight train of the defendant had proceeded northward along the easterly track and had cleared the street intersection when Wong On King started to cross Alameda Street. Emerging from Marchessault Street an automobile proceeded to cross Alameda Street at the right of and near to Wong On King. As the latter reached the easterly track of the railway the automobile made a sudden turn to the left and collided with Wong On King, knocking him to the street, where he lay with his legs across the easterly rail and his body between the two rails of the track. The automobile proceeded to the left and south for some yards or rods on Alameda Street, where it came to a stop. The locomotive was following the freight train on the easterly or northbound track. This locomotive was backing northward, the tender being in front. It was traveling at approximately six miles per hour and, according to the engineer's testimony, maintained a distance of 360 to 400 feet from the

rear of the receding freight train. Alameda Street was straight for at least a number of blocks south from the point of the accident. At the time of the happening of the latter there was considerable traffic of vehicles along its paved surface. It did not appear in evidence that any of this traffic came between the engine and the fallen Chinaman from the moment that the automobile threw the man to the street up to the time that the wheels of the tender ran over his limbs. An eye-witness stated that when Wong On King started to cross the street the witness saw the engine approaching from the south at a point at about Jeannette Street, which was shown to be 345 feet away from Marchessault. As the engine approached the fallen man several persons attempted to attract the attention of the operatives on the locomotive and finally the call of a truckman did reach the car of the fireman, who in turn signaled the engineer and the engine was brought to a standstill—not, however, until some of the wheels of the tender had passed over the limbs of the Chinaman. The body of the tender of the locomotive was fourteen feet high, eight feet wide, and thirty-seven feet and seven inches long. The sides of the engine cab were not so wide as the tender, but the engineer and fireman, by projecting their heads in the customary manner through the windows of the cab, could bring their eyes a few inches outside the lines of the tender—as the fireman stated, "maybe one or two inches." They could not see over the top of the tender. At the time in question the fireman and engineer were in their accustomed places, the fireman being on the right side of the cab as the engine proceeded backward and the engineer on the left. The fireman stated that, looking up the track in the direction they were going, he could see the east rail thereof from a point about twenty-five feet ahead of the tender; that he could not see the west rail nearer than a point between 150 and 200 feet away. The engineer testified similarly, but stated that from his side he had a clear view of the westerly track except for a distance of about thirty-five feet immediately ahead of the tender, but that he could not see any part of the easterly track nearer than a point 150 feet away. Both of the operatives were charged by instructions from their employer to keep a sharp lookout ahead, and it

does not appear that attention to any other necessary duties prevented them from so doing at the time in question. The fireman stated that he observed the automobile in question cross the tracks when it was 120 feet away from the tender of the locomotive. He did not explain why in such circumstances he failed to observe the prostrate Chinaman lying upon the easterly rail after the automobile crossed. By the testimony of some of the plaintiff's witnesses, the jury might well have inferred that the locomotive was farther than 120 feet away from the corner of Marchessault and Alameda Streets when the automobile struck Wong On King.

It is not disputed by appellants as a correct rule of law that, if the Chinaman was in nowise negligent in crossing the street at that time and place, the negligence of any third person, having no privity with him in the act, could not be used to establish the defense of contributory negligence. The burden was upon the defendants to show that Wong On King was guilty of some act of contributory negligence. The evidence failed to disclose any such negligence. The evidence did show a case where the jury was altogether justified in concluding that the operatives on the locomotive did not use reasonable care in observing the track ahead of them. [1] Where the rule of "last clear chance" applies it necessarily presupposes a condition where the party injured has, by his own negligence, placed himself in a situation of danger, and where the party causing his injuries, in addition to whatever primary act of negligence may be chargeable against him, and after perceiving the dangerous situation of the first party, acts with further negligence and injury results. [2] The evidence does not seem to disclose a case where the doctrine of last chance was applicable at all; either the operatives of the locomotive were negligent and responsible, or the accident was the inevitable result of circumstances for which no such responsibility would exist. The giving of the instruction complained of, therefore, did not constitute error. For like reasons the trial judge did not err in modifying as he did the instruction offered by the appellants.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 29, 1922.

All the Justices concurred, except Lawlor, J., and Wilbur, J., who were absent.

Shurtleff, J., was also absent and Richards, J., *pro tem.*, was acting.